IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NICOLE RAWLEY and ANNA KRANOVA,<br><br>        **Plaintiffs,**<br><br>        **vs.**<br><br>TATTLE TAIL, INC. d/b/a **Tattletale Lounge,** DENIS KAUFMAN, **and** RICHARD R. SCHRONCE,<br><br>        **Defendants.** | Civil Action No. _____<br><br><br>Jury Trial Demanded |

### COMPLAINT

Plaintiffs Nicole Rawley and Anna Kranova, by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 7, file their Complaint against Tattle Tail, Inc. (hereinafter "Tattletale") and Denis Kaufman, showing the Court as follows:

### Introduction

1.

Plaintiffs bring this action because Defendants violated the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. § 201 *et seq*., ("the FLSA") by failing to pay them minimum wages as required by the FLSA.

2.

Plaintiffs additionally assert claims pursuant to 26 U.S.C. § 7434 (Willful Filing of Fraudulent Information Returns) against Defendant Tattletale because it intentionally misclassified them as independent contractors and reported their earnings on IRS Forms 1099-MISC in an attempt to evade the payment of payroll taxes, unemployment benefits, and worker's compensation benefits.

3.

A related case, *Farnsworth et al. v. Tattle Tail, Inc. et al.*, Case No. 1:14-cv-90-AT (N.D. Ga. 2014), was recently dismissed pursuant to a settlement agreement approved by the Court.

**JURISDICTION AND VENUE**

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391 because Defendants conduct business in this judicial

district; and all events giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

6.

Nicole Rawley ("Rawley") is an individual residing in DeKalb County, Georgia.

7.

Anna Kranova ("Kranova") is an individual residing in Fulton County, Georgia.

8.

Tattle Tail is a corporation organized under the laws of the State of Georgia.

9.

Tattle Tail can be served with process through its registered agent, Denis G. Kaufman, at 2075-B Piedmont Road, N.W., Atlanta, Georgia 30324.

10.

Tattle Tail is subject to the personal jurisdiction of this Court.

11.

Denis G. Kaufman ("Kaufman") is a resident of Broward County, Florida.

12.

Kaufman can been served with process at his residence in Pompano Beach, Florida.

13.

Kaufman is subject to the personal jurisdiction of this Court.

14.

Richard Schronce ("Schronce") is a resident of Gwinnett County, Georgia

15.

Schronce can be served at his residence in Dacula, Georgia, or wherever he can be found.

16.

Schronce is subject to the personal jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

17.

Defendants own and operate Tattletale, a night club featuring nude female dancing ("the Club") located at 2075 Piedmont Road, N.W., Atlanta, Georgia 30324.

18.

The Club's primary business is to provide entertainment in the form of nude and semi-nude dancers and the sale of alcoholic beverages.

19.

Rawley worked as a dancer for at the Club from approximately 2004 through March 2013.

20.

Rawley's work as a dancer was integral to the business model and success of the Club.

21.

At all times material hereto, Tattle Tail has been an "employer" of Rawley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

22.

At all times material hereto, Rawley has been an "employee" of Tattle Tail as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

23.

Kranova worked as a dancer for at the Club from approximately 2010 through mid-May 2013.

24.

Kranova's work as a dancer was integral to the business model and success of the Club.

25.

At all times material hereto, Tattle Tail has been an "employer" of Kranova as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

26.

At all times material hereto, Kranova has been an "employee" of Tattle Tail as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

27.

At all times material hereto, Kaufman exercised operational control over the work activities of Plaintiffs.

28.

At all times material hereto, Kaufman participated in management of the day-to-day operations of the Club and regularly communicated with the club's managerial employees.

29.

At all times material hereto, Kaufman had authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

30.

At all times material hereto, Kaufman had authority over the terms of Plaintiffs' compensation.

31.

At all times material hereto, Kaufman has been an "employer" of Rawley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

32.

At all times material hereto, Kaufman has been an "employer" of Kranova as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

33.

At all times material hereto, Schronce exercised operational control over the work activities of Plaintiffs.

34.

At all times material hereto, Schronce participated in management of the day-to-day operations of the Club.

35.

At all times material hereto, Schronce had authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

36.

At all times material hereto, Schronce had authority over the terms of Plaintiffs' compensation.

37.

At all times material hereto, Schronce has been an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

38.

At all times material hereto, Plaintiffs have been "employees" of Schronce as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

39.

At all times material hereto, two or more employees of the Club used or handled items that moved in interstate commerce that are necessary for performing its commercial purpose.

40.

Such items include wine, beer, liquor and other alcoholic products; food and food service items; computers; music equipment; office furniture and office supplies.

41.

Throughout 2011, the Club had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

42.

Throughout 2011, the Club had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

43.

Throughout 2011, the Club had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

44.

Throughout 2011, the Club had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

45.

During 2011, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

46.

During 2011, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

47.

During 2011, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.

Throughout 2012, the Club had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

49.

Throughout 2012, the Club had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

50.

Throughout 2012, the Club had two or more employees who regularly processed credit card transaction involving financial institutions located in states other than the State of Georgia.

51.

Throughout 2012, the Club had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

52.

During 2012, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

53.

During 2012, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

54.

During 2012, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

55.

Throughout 2013, the Club had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

56.

Throughout 2013, the Club had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

57.

Throughout 2013, the Club had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

58.

Throughout 2013, the Club had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

59.

During 2013, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

60.

During 2013, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

61.

During 2013, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

62.

At all times material hereto, the Club has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

63.

At all times material hereto, Rawley was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

64.

At all times material hereto, Rawley was not employed in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

65.

At all times material hereto, Rawley was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

66.

At all times material hereto, Kranova was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

67.

At all times material hereto, Kranova in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

68.

At all times material hereto, Kranova was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

69.

At all times material hereto, Defendants failed to pay Rawley wages for work she performed as their employee.

70.

At all times material hereto, Defendants failed to pay Kranova wages for work she performed as their employee.

71.

At all times material hereto, Rawley's sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

72.

At all times material hereto, Kranova's  sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

73.

At all times material hereto, Defendants required Plaintiffs to pay monies to Defendants in the form of fees each shift and fines for rule infractions.

74.

At all times material hereto, Defendants required Plaintiffs to pay them certain fees during each shift they worked including bar fees, DJ fees, and House Mom fees.

75.

At all times material hereto, Defendants required Plaintiffs to follow policies and rules they established.

76.

Such rules concerned, *inter alia*, dancer attire, dancer appearance, minimum number of shifts per week, stage rotation scheduling, work attendance, time of departure, consumption of food and beverages, and interactions with customers.

77.

At all times material hereto, Defendants tracked Plaintiffs' attendance manually through the use of sign-in sheets.

78.

At all times material hereto, Defendants prohibited Plaintiffs from leaving the Club premises during any portion of their shifts.

79.

At all times material hereto, Defendants threatened Plaintiffs with disciplinary actions including but not limited to verbal warnings, imposition of fines, suspension, or termination for infractions of Defendants' established policies and rules.

80.

Plaintiffs did not undergo any specialized training or course of study in order to perform as dancers for Defendants.

81.

Defendants financed all advertising and marketing efforts undertaken on behalf of the Club.

82.

Defendants made capital investments in the Club's facilities, maintenance, sound system, lights, food, beverage and inventory.

83.

Defendants made all hiring decisions regarding bar staff, security, entertainers, managerial and all other employees at the Club.

84.

At all times material hereto, Defendants classified Plaintiffs as independent contractors.

85.

At all times material hereto, Plaintiffs were employees of Defendants.

86.

At all times material hereto, Defendants misclassified Plaintiffs as independent contractors.

87.

At all times material hereto, Defendants willfully misclassified Plaintiffs as independent contractors.

88.

At all times material hereto, Defendants have failed to "post and keep posted a notice explaining the [FLSA] . . . in [a] conspicuous place[]," as required by 29 CFR § 516.4.

89.

In 1993, the Club was audited by the Wage & Hour Division of the United States Department of Labor.

90.

Wage & Hour determined that the dancers employed at the Club were employees and not independent contractors, and that Defendants must pay them the federally mandated minimum wage.

91.

As part of a settlement with Wage & Hour, Defendants agreed to pay dancers at the Club the federally mandated minimum wage.

92.

Since that time, Defendants have flouted their obligations to Plaintiffs and other dancers at the Club, have fraudulently misclassified them as independent contractors, and have willfully failed to pay them minimum wages.

93.

In 2012 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Rawley in calendar year 2011 as nonemployee compensation.

94.

In 2011 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Rawley in calendar year 2010 as nonemployee compensation.

95.

In 2010 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Rawley in calendar year 2009 as nonemployee compensation.

96.

In 2013 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Kranova in calendar year 2012 as nonemployee compensation.

97.

In 2012 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Kranova in calendar year 2011 as nonemployee compensation.

98.

In 2011 Tattle Tail filed Forms 1099-MISC with the Internal Revenue Service categorizing monies earned by Rawley in calendar year 2010 as nonemployee compensation.

99.

Tattle Tail's characterization of Plaintiffs' earnings as nonemployee compensation—rather than employee compensation in a Form W-2—was false, because Plaintiffs were employees of Tattle Tail and not independent contractors.

100.

In each relevant year, Tattle Tail fraudulently misclassified Plaintiffs as independent contractors and filed fraudulent Forms 1099 with respect to their earnings for the purpose of Tattle Tail's own enrichment, which included but was not limited to avoiding payment of minimum wages, avoiding payment of state unemployment taxes, avoiding state and federal payroll tax contributions, and avoiding state workers' compensation taxes.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE PURSUANT TO 29 U.S.C. § 206

101.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

102.

As all times material hereto, Defendants misclassified Plaintiffs as independent contractors.

103.

At all times material hereto, Plaintiffs have been employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

104.

Defendants failed to inform Plaintiffs of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

105.

At all times material hereto, Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

106.

At all times material hereto, Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

107.

Plaintiffs are entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

108.

Plaintiffs are entitled to repayment of the money Defendants required them to pay in the form of fees and fines in violation of the "free and clear" requirement of 29 CFR 531.35.

109.

As a result Defendants' requirement that Plaintiffs pay them fees and fines, Plaintiffs are entitled to reimbursement of all fees and fines paid to Defendants in addition to all other unpaid wages.

110.

As a result of the willful nature of Defendants' violations of the FLSA's minimum wage requirements, as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

111.

As a result of their nonpayment of wages to Plaintiffs in violation of the FLSA's minimum wage requirements, as alleged above, Defendants are liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II
## FRAUDULENT FILING OF TAX INFORMATION RETURNS PURSUANT TO 26 U.S.C. § 7434

112.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

113.

At all times material hereto, Plaintiffs have been employees of Tattle Tail.

114.

At all times material hereto, Tattle Tail has classified Plaintiffs as independent contractors, and not as an employees.

115.

At all times material hereto, Tattle Tail has fraudulently misclassified Plaintiffs as independent contractors.

116.

In 2011 and 2012, Tattle Tail willfully filed Forms 1099-MISC with the Internal Revenue Service categorizing certain monies paid to Rawley in calendar years 2010 and 2011 as nonemployee compensation.

117.

Tattle Tail's classification of Plaintiffs' income as nonemployee compensation in the Forms 1099-MISC was false and fraudulent.

118.

Tattle Tail fraudulently misclassified Plaintiffs' income as nonemployee compensation for Defendants' own wrongful enrichment.

WHEREFORE, Plaintiffs request that this Court:

(a)     Take jurisdiction of this matter;

(b)     Find that Defendants have willfully violated 29 U.S.C. § 201 et seq. by

        failing to pay Plaintiffs minimum wages;

(c)     Issue an Order holding each of the Defendants to be an "employer" as that

        term is defined under the FLSA;

(d)     Issue an Order holding Defendants to be an "enterprise" as that term is

        defined in 29 U.S.C. § 203(r)(1);

(e)     Grant a trial by jury as to all matters properly triable to a jury;

(f)     Issue a judgment declaring that Plaintiffs were covered by the provisions of

        the FLSA and that Defendants have failed to comply with the requirements

        of the FLSA;

(g)     Award each Plaintiff proper payment for each hour worked from during the

        relevant time period, calculated at the minimum wage rate of $7.25 per hour,

        and liquidated damages equaling 100% of the minimum wages due to each

        Plaintiff, as required by the FLSA;

(h)     Award Plaintiffs the amount of all kickbacks improperly collected by

        Defendants during the relevant time period, and liquidated damages equaling

        100% of the amount of the improperly paid kickbacks;

(i)     Award Plaintiffs prejudgment interest on all amounts owed;

(j)     Award Plaintiffs nominal damages;

(k)     Award Plaintiffs their reasonable attorneys' fees and costs of litigation

        pursuant to 29 U.S.C. § 216(b);

(l)     Find that Defendants have violated 26 U.S.C. § 7434 by willfully filing

        fraudulent tax information returns with respect to Plaintiffs' earnings during

        each relevant year;

(m)     Award Plaintiffs no less than $5,000 for each fraudulent tax information

        return filed with respect Plaintiffs' earnings during the relevant time period;

(n)     Award Plaintiffs their reasonable attorneys' fees and costs of litigation

        pursuant to 26 U.S.C. § 7434; and

(o)     Award any and such other further relief this Court deems just, equitable and

        proper.

This 6th day of October 2015.

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS,**
**FITZPATRICK & BENJAMIN, LLC**

3100 Centennial Tower                */s/Mitchell D. Benjamin*
101 Marietta Street                  Mitchell D. Benjamin
Atlanta, Georgia 30303               Ga. Bar No. 049888
(404) 979-3171
(404) 979-3170 (f)                   */s/ Charles R. Bridgers*
benjamin@dcbflegal.com               Charles R. Bridgers
charlesbridgers@dcbflegal.com        Ga. Bar No. 080791
matthew.herrington@dcbflegal.com
                                     */s/ Matthew W. Herrington*
                                     Matthew W. Herrington
                                     Ga. Bar No. 275411

                                     Counsel for Plaintiffs